UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE CINCINNATI CHILDREN'S HOSTPITAL RETIREMENT PLAN, | : : : | Case No. 1:19-cv-831 |
| | : | Judge Timothy S. Black |
| Plaintiff, | : : | |
| vs. | : : | |
| TY WALL, | : : | |
| Defendant. | : | |

**ORDER GRANTING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT (Doc. 7)**

This case is before the Court on the motion of Plaintiff The Cincinnati Children's Hospital Retirement Plan (the "Plan") for a default judgment. (Doc. 18). Defendant Ty Wall did not respond.

### I.    PROCEDURAL HISTORY

Plaintiff filed this the Complaint (Doc. 1) against Defendant on September 30, 2019. Defendant was served with a copy of the summons and Complaint on October 4, 2019. (Doc. 4). Pursuant to Federal Rule of Civil Procedure 12(a), Defendant was required to file and serve their answer no later than October 25, 2019. To date, no responsive pleading has been filed or served. On December 12, 2019, the Clerk properly entered default. (Doc. 6). Subsequently, Plaintiff filed the instant motion for default judgment on January 2, 2020. (Doc. 7).

## II. FACTUAL BACKGROUND

Plaintiff brings this action against Defendant Wall under the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, to recoup an inadvertent overpayment made to Defendant in the net amount of $32,819.07

Defendant was a participant in the Plan through his employment with Cincinnati Children's Hospital Medical Center. (Doc. 1 at ¶ 6). Defendant's employment ended on September 26, 2006. (*Id.* at ¶ 7).

In March 2019, the Plan sent out an annual funding notice outlining the ability to elect a lump sum distribution of retirement benefits and permitted participants to run estimates on PensionPath, an online portal available to Plan participants. (*Id.* at ¶ 9). On March 31, 2019, Defendant ran an estimate on PensionPath and updated his beneficiary information. (*Id.*). On March 31, 2019, Defendant requested a lump sum distribution of his retirement benefits. (*Id.* at ¶ 10). Defendant received another mailing campaign in mid-April providing him the ability to elect a lump sum distribution of his retirement benefits. (*Id.* at ¶ 11). Defendant then made another election for a lump sum distribution of his retirement benefits. (*Id.* at ¶ 12).

Because of the short time period between Defendant's election to receive a lump sum distribution on March 31, 2019 and his mid-April election, insufficient time passed to allow the Plan's system to update and prevent Defendant's second request for a lump sum distribution of his retirement benefits. (*Id.* at ¶ 13). Although the Defendant should

have only received a net lump sum payment of $32,819.07, the Plan inadvertently distributed two net lump sum payments of $32,819.07, totaling $65,638.14. (*Id.* at ¶¶ 14–15; Doc. 7-1, Affidavit of Lynn hall ("Hall Aff.") at ¶ 10).

The terms of the Plan provide:

> [i]n the event of an overpayment of benefits by reason of mistake (including by reason of misstatement), the Administrative Committee may recoup any such overpayment by means of offsetting, adjusting, or reducing the recipient's benefits or by any other means. For purposes of the Plan, any Participant, Beneficiary or other recipient of benefits under the Plan grants to the Plan an equitable lien and constructive trust with respect to any overpayments

(Doc. 1 at ¶ 29). After discovering the inadvertent overpayment, the Plan sent Defendant a letter on July 18, 2019 requesting he return the $32,819.07 net overpayment. (*Id.* at ¶ 18). Defendant responded via email that same day claiming his personal bank "already annulled the second check and deducted the amount of the second check from [the Plan] from my account." (*Id.* at ¶ 19). The Plan never received a fund reversal. (*Id.* at ¶ 20).

Subsequently, after the Plan had not received the funds, the Plan requested a bank trace number from Defendant to locate the overpayment. (*Id.* at ¶ 21). Plaintiff claims it requested a trace number from Defendant several times, but Defendant did not respond. (*Id.* at ¶ 22). The Plan also gave Defendant the option to return the overpayment via check made payable to the Plan, and again Defendant did not respond. (*Id.* at ¶ 23).

On August 12, 2019, the Plan sent a final letter to Defendant requesting the return of $32,819.07, but Defendant did not respond. (*Id.* at ¶ 24). This lawsuit followed. Defendant has failed to respond. Plaintiff's motion for default judgment is ripe.

## III. STANDARD OF REVIEW

Applications for default judgment are governed by Fed. R. Civ. P. 55(b)(2). Following the clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) and the party's application for default under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09-cv-298, 2010 U.S. Dist. LEXIS 86241, at *1 (E.D. Cal. Aug. 23, 2010) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F.2d 1319. 1323 (7th Cir. 1983)).

While liability may be shown by well-pleaded allegations, this Court is required to "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 U.S. Dist. LEXIS 62027, at *5 (E.D. Mich. June. 23, 2010). To do so, the civil rules "require that the party moving for a default judgment must present some evidence of its damages." *Mill's Pride, L.P. v. W.D. Miller Enter.*, No. 2:07-cv-990, 2010 U.S. Dist. LEXIS 36756, at *1 (S.D. Ohio Mar. 12, 2010).

## IV. ANALYSIS

Plaintiff moves for default judgment and an award of damages against Defendant in the amount of the overpayment ($32,819.07) because of the Plan's equitable lien and/or constructive trust by agreement and through equitable restitution. Defendant having defaulted, the factual allegations in the complaint, except those related to the amount of damages, are deemed true. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110

(6th Cir. 1995).

Upon review of the record, the Court finds that default judgment is warranted in this case. Defendant has made clear to the Court that he has no intention of defending this action. Based on the allegations in the Complaint, which the Court accepts as true, and the averments in affidavits submitted in support of default judgment (Hall Aff.), the Court finds that Defendant was inadvertently overpaid by the Plan and that the Plan is entitled to a refund of the overpaid funds pursuant to ERISA § 502(a)(3). With liability established, the Court must determine the extent of damages.

To ascertain a sum of damages, Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009). An evidentiary hearing is not required if the Court can determine the amount of damages by computation from the record before it. *HICA Educ. Loan Corp. v. Jones*, No. 4:12cv962, 2012 U.S. Dist. LEXIS 116166, at *1 (N.D. Ohio Aug. 16, 2012). The Court may rely on affidavits submitted on the issue of damages. *Schilling v. Interim Healthcare of Upper Ohio Valley, Inc.*, No. 2:06-cv-487, 2007 U.S. Dist. LEXIS 3118, at *2 (S.D. Ohio Jan. 16, 2007).

Here, Plaintiff seeks a refund of $32,819.07 for an overpayment to Defendant by the Plan. Plaintiff's motion for default judgment attaches the Affidavit of Lynn Hall (Hall Aff.), a benefits consultant for Cincinnati Children's Hospital Medical Center, to support its request for $32,819.07. The Court finds that the Affidavit of Lynn Hall clearly shows that the Plan is entitled to $32,819.07 from the Defendant. (*Id.* at ¶¶ 9–10).

5

Plaintiff also seeks $3,642.20 for attorneys' fees and costs.  Pursuant to ERISA § 532(g), a court has discretion to award attorneys' fees.  The Sixth Circuit has provided the following factors to consider whether attorney's fees are appropriate:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Secy. Of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).

The first factor weighs in favor of awarding attorney's fees.  As Plaintiff notes, at the time of the motion for default judgment, Defendant had been obstructive for almost six months even though he was aware that he was not entitled to the $32,819.07 net overpayment.  After initially wrongfully claiming that the bank had annulled the second lump payment, Defendant stopped responding to Plaintiff.  Therefore, Defendant has acted in bad faith.[1]

The third factor weighs in favor of awarding attorneys' fees. The Court agrees with the Plaintiff that "an award of attorneys' fees would certainly deter any other participant who receives an inadvertent overpayment from refusing to cooperate with the Plan in its efforts to recoup the overpayment.  (Doc. 7 at 7).

---

[1] Plaintiff does not address the second factor of whether Defendant has the ability to satisfy an award of attorneys' fees.

6

The fourth factor clearly weighs in favor of awarding attorneys' fees because here, the Plan is attempting to recoup overpayment to Defendant for the benefit of all of the Plan's participants.

The fifth factor also weights in favor of the Plan as the Court has ruled for Plaintiff on the merits. Accordingly, the Court finds that overall the relevant factors weigh in favor of awarding attorneys' fees.

The Court must also determine whether the requested attorneys' fees are reasonable. District courts use the lodestar method to determine an award of reasonable attorneys' fees. The lodestar amount is "calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Medical Products, Inc.*, 515 F. 531, 551 (6th Cir. 2008).

### A. Reasonable Hourly Rate

"A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Village of Sebring,* 36 F.3d 517, 531–32 (6th Cir. 1994), *cert. denied,* 514 U.S. 1127 (1995). "A reasonable fee is one that is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers.'" *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 446 (6th Cir. 2009) (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). To determine a reasonable hourly rate, a useful guideline is the prevailing market rate in the relevant community, defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command." *Id.* at 447 (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343,

7

350 (6th Cir. 2000)). The Court may also consider an attorney's own normal billing rates to help calculate a reasonable fee. *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995).

Plaintiff has submitted the Affidavit of Robert P. Johnson, attorney for Plaintiff, in support of its request for attorneys' fees. (Doc. 7-2). Plaintiff seeks $270.00 per hour for work done by Melanie M. Lazor, a Thompson Hine LLP associate. (*Id.* at ¶ 4). Plaintiff also seeks $545.00 per hour for the work of Laura A. Ryan, a Thompson Hine LLP partner specializing in employee benefits. (*Id.* at ¶ 8). Considering the experience of the attorneys in this case, the attorneys' normal billing rates, and the importance of attracting competent counsel to handle ERISA matters, the Court finds that the requested hourly rates for Plaintiff's attorneys are reasonable.

### B. Reasonable Number of Hours

In determining whether the number of hours expended on a case is reasonable, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990). "The documentation offered in support of the hours charged must be of sufficient detail to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of such litigation." *Bench Billboard Co. v. City of Toledo*, 759 F. Supp. 2d 905, 913 (N.D. Ohio 2010), *aff'd* in part, *rev'd* in part, 499 F. App'x 538 (6th Cir. 2012) (citing *United Slate Tile and Composition Roofers v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502, n. 2 (6th Cir. 1984).

Additionally, counsel is expected to exercise billing judgment by excluding "hours that were not 'reasonably expended.'" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

The Affidavit of Robert P. Johnson attaches a timesheet of the hours billed in this case (Doc. 7-2 at 6–7). The attorneys working on this case billed 11.6 total hours through December 23, 2019. (*Id.* at ¶ 12). After a thorough review of the timesheet of hours billed, the Court finds that the number of hours expended on this case by counsel was clearly reasonable.

The Affidavit of Robert P. Johnson also demonstrates that the Plan has incurred $400.20 in costs associated with this litigation. (*Id.* at ¶ 14). The Court finds the requested costs are reasonable.

Accordingly, Plaintiff is entitled to $3,642.20 in attorneys' fees and costs through December 23, 2019. Plaintiff also seeks fees and costs incurred and interest accrued from the filing of its motion for default judgment to the date of the entry of this judgment. Plaintiff may make a further motion for additional fees, costs, and interest containing proper evidentiary support.

## V.  CONCLUSION

For these reasons, Plaintiff's motion for default judgment (Doc. 7) is **GRANTED**. Accordingly:

1. Plaintiff is granted default judgment,

2. Plaintiff is awarded $32,817.07 for the inadvertent overpayment made to Defendant.

3. Plaintiff is awarded $3,642.20 in attorneys' fees and costs.

9

4. The Clerk shall enter judgment accordingly, whereupon this case is **CLOSED** on the docket of this Court.

**IT IS SO ORDERED.**

Date: 9/29/2020

*s/Timothy S. Black*
Timothy S. Black
United States District Judge